UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**UNITED STATES OF AMERICA,**

    Plaintiff,

v.                                                  Case No.: 8:13-CR-579-T-33EAJ

**KERMON LEMAR WILLIAMS,**

    **Defendant.**

_____/

**REPORT AND RECOMMENDATION**

Before the court are Defendant Kermon Lemar Williams' ("Defendant's") **Mr. Williams' Motion to Suppress Illegally Seized Evidence and Request for Evidentiary Hearing** (Dkt. 14) and the **United States' Response in Opposition to Defendant's Motion to Suppress Evidence** (Dkt. 17).[1] An evidentiary hearing and oral argument have been held. For the reasons stated herein, the undersigned recommends that Mr. Williams' Motion to Suppress Illegally Seized Evidence and Request for Evidentiary Hearing (Dkt. 14) be denied.

**Findings of Fact**

The following facts are established by a preponderance of credible evidence:

1.     Defendant resides with his mother, Loretta Higgs, at 4225 3rd Avenue South, St. Petersburg, Florida 33711. Defendant's driver's license shows 4225 3rd Avenue South, St. Petersburg, Florida 33711 as his address.[2]

---

[1] The motion has been referred to the undersigned for a report and recommendation. See 28 U.S.C. § 636(b); Local Rules 6.01(b) and (c), M.D. Fla.

[2] No other findings on this issue are necessary as the Government conceded in closing that Defendant has standing to assert a violation of his Fourth Amendment rights in this case.

2. On the evening of October 4, 2013, Officer David Brody ("Officer Brody") of the St. Petersburg Police Department was on patrol in the area of 42nd Street South and 3rd Avenue South.

3. At approximately 10:30 p.m., Officer Brody observed a silver Pontiac vehicle with a temporary license tag. When he ran the tag, he discovered that it did not pertain to the Pontiac vehicle and was invalid.

4. Officer Brody turned on the lights and siren and instituted a traffic stop. It appeared as though the driver would pull over, but instead the Pontiac rolled through the intersection, accelerated, and drove away from the police vehicle. The vehicle turned onto 3rd Avenue South, screeching its tires. Pursuant to St. Petersburg Police Department policy, Officer Brody did not pursue the vehicle.

5. Officer Brody observed the vehicle stop near the residence at 4225 3rd Avenue South, near the intersection of 3rd Avenue South and 42nd Street South.

6. As Officer Brody approached, the driver, later identified as Defendant, exited the vehicle.

7. The area was well lit and Officer Brody also used his spotlight.

8. Defendant looked directly at Officer Brody and fled on foot between the residences, ignoring Officer Brody's direction to stop.

9. Officer Brody observed that Defendant held a green plastic bag with grey trim.

10. Officer Brody chased the Defendant who jumped a six-foot wood fence surrounding 4225 3rd Avenue South.

11. Officer Brody approached the fence, looked over it, and observed Defendant place

the bag on an open barbeque grill inside the fenced back yard and continue running along the back of the residence.

12. Officer Brody did not need to use his flashlight to look into the yard. The area outside the fence was dark, but the area inside the fence was lit by floodlights.

13. He observed two pit bulls in the fenced yard who were tied up.

14. Officer Brody returned to the police cruiser and called for backup.

15. Within two to three minutes, Defendant reappeared with a set of keys and his driver's license.

16. Officer Brody got out of the police cruiser and ordered Defendant to the ground; Defendant complied.

17. Officer Brody arrested Defendant for Fleeing and Eluding and Resisting an Officer without Violence.

18. Officers Mitchell Closser ("Officer Closser") and Brandon Klaiber ("Officer Klaiber") arrived at 4225 3rd Avenue South while Defendant was being arrested.

19. Officer Brody asked Officers Closser and Klaiber to search the fenced yard to look for possible contraband, specifically the green bag on the barbecue grill; Defendant did not object or indicate he lived at the house during the exchange between Officers Brody, Closser, and Klaiber.

20. Officers Closser and Klaiber entered the back yard and found a green plastic bag containing a firearm (Hipoint, model C-9, 9mm pistol, serial number P1567426). The grip of the firearm was visible through the opening of the bag.

21. Officer Brody confirmed it was the same green bag and barbecue grill he had seen

earlier and proceeded to check Defendant's criminal history while Officer Closser remained with the firearm; the records check confirmed Defendant was a convicted felon.

22. Although he obtained Defendant's driver's license when Defendant came out from the fenced back yard of the house, Officer Brody did not notice that Defendant's address matched that of the location of arrest until after the firearm was discovered.

23. At some point between the officers' discovery of the green bag and firearm within it and the arrival of the evidence technician, the firearm was removed from the bag and placed on top of the bag on the open grill.

24. After an evidence technician arrived and took photos, Officer Closser recovered the firearm from the back yard.

25. The firearm was loaded with eight rounds of 9mm ammunition (one hollow point round was in the chamber). The officers also found a second magazine with six rounds of 9mm ammunition in the bag.

26. Defendant was charged with being a felon in possession of a firearm.

27. To the extent that the facts surrounding the stop and search are contradicted by the testimony of Maneka Bolden, Defendant's girlfriend, and Robert Carr and Wanda Walker, residents of the neighborhood who viewed some of the interactions between Defendant and law enforcement, the Court finds the testimony of the officers more credible.

## Conclusions of Law

Defendant argues the police seized the firearm without probable cause or a warrant, in

violation of Defendant's Fourth Amendment rights. The Government responds that the firearm was seized based on probable cause without a warrant under the exigent circumstances exception to the Fourth Amendment's warrant requirement and the plain view doctrine.

"It is a basic principle of Fourth Amendment law that searches and seizures inside a home without a warrant are presumptively unreasonable." Payton v. New York, 445 U.S. 573, 586 (1980) (internal quotation marks and citation omitted). The curtilage of a home, i.e., the private property immediately adjacent to the home, is likewise protected from unreasonable search and seizure. United States v. Quintana, 594 F. Supp. 2d 1291, 1301 (M.D Fla. 2009). Whether private property is part of the curtilage requires examination of four factors: "the proximity of the area claimed to be curtilage to the home, whether the area is included within an enclosure surrounding the home, the nature of the uses to which the area is put, and the steps taken by the resident to protect the area from observation by people passing by." United States v. Dunn, 480 U.S. 294, 301 (1987). There is no dispute here that the fenced back yard was part of the residence's curtilage.

Though a warrantless search inside a home is presumptively unreasonable, "'[a] warrantless search is allowed . . . where both probable cause and exigent circumstances exist.'" United States v. Franklin, 694 F.3d 1, 7 (11th Cir. 2012) (quoting United States v. Tobin, 923 F.2d 1506, 1510 (11th Cir. 1991) (en banc)). But the government bears a heavy burden to show failure to obtain a warrant was justified. United States v. Blasco, 702 F.2d 1315, 1325 (11th Cir. 1983).

Probable cause is examined objectively within the totality of the circumstances; it exists when "'there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" Franklin, 694 F.3d at 7 (alteration in original) (quoting Tobin, 923 F.3d at 1510). "[T]he probable-cause determination must be based on objective facts that could justify the issuance of a

5

warrant by a magistrate and not merely on the subjective good faith of the police officers." United States v. Ross, 456 U.S. 798, 808 (1982).

While a suspect's flight, alone, is not proof of wrongdoing, the nature and duration of the flight are relevant considerations. See United States v. Franklin, 323 F.3d 1298, 1301-02 (11th Cir. 2003) (explaining that the nature and duration of the defendant's flight combined with running behind a building, climbing a fence, running across a parking lot, and starting to climb a second fence provided the reasonable suspicion necessary for the police officers to stop the defendant). "[D]eliberately furtive actions and flight at the approach of strangers or law officers[,] . . . when coupled with specific knowledge on the part of the officer relating the suspect to the evidence of crime, . . . are proper factors to be considered in the decision to make an arrest." Sibron v. New York, 392 U.S. 40, 66-67 (1968).

In this case, Officer Brody was patrolling a high crime area known for drug-related activity when he instituted a traffic stop for a vehicle tag registration violation. Defendant, who was driving the silver Pontiac spotted by Officer Brody, evaded the attempted traffic stop using high speed, abrupt turns, and screeching tires. After stopping the vehicle at 4225 3rd Avenue South, Defendant exited the vehicle holding a green bag with grey trim, and fled on foot between two residences, ignoring Officer Brody's order to stop and his subsequent chase. Defendant then scaled a six foot wooden privacy fence, placed the green bag with grey trim on an open barbecue grill in the back yard of the residence, and continued running through the yard, disappearing from Officer Brody's sight. Two to three minutes later, Defendant calmly reappeared in front of the residence without the green bag and had only keys and his driver's license in his hands. Defendant complied with Officer Brody's order to get on the ground and was arrested. Defendant's calm demeanor after initially

fleeing reasonably led Officer Brody to believe Defendant had disposed of possible contraband in the green bag he was previously carrying. While the evidence is not overwhelming, considering the totality of the circumstances, Officer Brody had probable cause to believe the green bag with grey trim discarded by Defendant contained evidence of a crime. Further, Defendant had already aroused the suspicion of law enforcement by driving a vehicle with an invalid tag, speeding away when Officer Brody attempted to pull him over, and again disregarding the officer's directions when Defendant stopped his vehicle and ran into the fenced back yard with the green bag.

Beyond probable cause, a warrantless search also requires an exigent circumstance. Franklin, 694 F.3d at 7. An exigent circumstance exists when, objectively, "'the facts . . . would lead a reasonable, experienced agent to believe that evidence *might be* destroyed before a warrant could be secured.'" Id. (alteration in original) (quoting Tobin, 923 F.3d at 1510). The exigent circumstances analysis involves weighing the "societal costs of obtaining a warrant" with the "reasons for prior recourse to a neutral magistrate." Blasco, 702 F.2d at 1325.

Exigent circumstances are present where there is "'danger of flight or escape; danger of harm to police officers or the general public; risk of loss, destruction, removal, or concealment of evidence; and hot pursuit of a fleeing suspect.'" United States v. Hayes, 334 F. App'x 222, 225 (11th Cir. 2009) (unpublished) (quoting United States v. Blasco, 702 F.2d 1315, 1325 (11th Cir. 1983)) (internal quotation marks omitted). Hot pursuit means there was a chase. Hazleton v. Trinidad, 488 F. App'x 349, 351 (11th Cir. 2012) (per curiam) (unpublished) (quoting United States v. Santana, 427 U.S. 38, 42-43 (1976)).[3] Additionally, just as mere flight does not automatically prove

---

[3] Defendant argues, and the Government concedes, that any hot pursuit in this case ended at the time Defendant reappeared in front of the residence and was arrested by Officer Brody.


wrongdoing, "[t]he mere presence of contraband . . . does not give rise to exigent circumstances. Rather, the appropriate inquiry is whether the facts . . . would lead a reasonable, experienced [officer] to believe that evidence might be destroyed before a warrant could be secured." Hayes, 334 F. App'x at 225 (internal quotation marks and citations omitted).

Although the Government conceded at the hearing that the officer's hot pursuit of Defendant ended when he returned to the front yard, the facts known to law enforcement reasonably suggested that Defendant had been carrying contraband of some sort which he abandoned in the back yard before he returned to the front yard where Officer Brody was. The facts presented in this case constitute exigent circumstances. The situation faced by Officer Brody was quickly developing in a high crime area in which Defendant evaded law enforcement, jumped a privacy fence, and disappeared for a few minutes before submitting to arrest. The area was known to police for drug-related offenses. Officer Brody testified that, based on his experience as a police officer in the area and Defendant's suspicious actions, he believed the bag contained illegal contraband, probably illegal drugs. Given Defendant's disappearance for several minutes, Officer Brody was concerned Defendant could have alerted a third party to remove the green bag from the grill where he left it. Additionally, during the time immediately following Defendant's arrest, Officer Brody was unaware of Defendant's residence and did not know who owned the home and yard into which Defendant fled. The search of the back yard was brief in duration and limited in scope. The totality of the circumstances, viewed objectively, presented a risk that evidence might be destroyed before a warrant could be obtained. [4]

---

[4] It is certainly true that the officers could have obtained a search warrant. They were in an urban area, and there were a sufficient number of officers to establish a perimeter around the house before Defendant came out and surrendered to Officer Brody. But the suspected contraband was

8

Additionally, the bag with an apparent firearm in it was in plain view. No warrant is necessary where the items seized were in plain view, provided that "the officer did not violate the Fourth Amendment in arriving at the place from which the evidence could be plainly viewed." Horton v. California, 496 U.S. 128, 136 (1990). See also Kentucky v. King, 131 S. Ct. 1849, 1858 (2011). The officer "must also have a lawful right of access to the object itself" and the object's "incriminating character must . . . be immediately apparent." Horton, 496 U.S. at 136-37.

Officer Brody testified that, looking over the top of the six foot fence, he was able to see Defendant place the green bag on the open barbecue grill. Standing outside the fence, Officer Brody did not violate Defendant's Fourth Amendment rights. Additionally, Officers Closser and Klaiber, given probable cause and exigent circumstances, had a lawful right to enter the back yard of the residence to look for the green bag. Finally, the bag's incriminating character was apparent at the time the officers entered the yard and found it. Officer Closser testified that he could see the grip of a firearm through the opening of the bag. Accordingly, no warrant was necessary. But cf., United States v. Rigales, 630 F.2d 364, 368 (5th Cir. 1980) (contents of case containing firearm could not be inferred from the outward appearance of the case where "[n]othing . . . demonstrate[d] that the zippered case was anything other than an ordinary briefcase that was simply heavy and bulging.")

## Conclusion

As the officers had probable cause to believe the green bag carried by Defendant contained evidence of a crime, were faced with exigent circumstances, and found the bag and firearm in plain

---

in the fenced back yard, and officers had no knowledge whether other persons were also in the home who could have taken or destroyed the evidence before a warrant was obtained. See United States v. Rubin, 474 F.2d 262, 268 (3d Cir. 1973) ("The emergency circumstances will vary from case to case, and the inherent necessities of the situation at the time must be scrutinized"), *cert. denied sub nom.* Agran v. United States, 414 U.S. 833 (1973).

9

view, the warrantless search and seizure of the green bag with grey trim and the firearm, bullets, and magazine found within it was valid under the Fourth Amendment.[5]

Accordingly and upon consideration, it is **RECOMMENDED** that:

(1)    Defendant's Motion to Suppress Illegally Seized Evidence and Request for Evidentiary Hearing (Dkt. 14) be **DENIED**.


**Date: April 3, 2014**

*/s/ Elizabeth A. Jenkins*
ELIZABETH A JENKINS
United States Magistrate Judge


**NOTICE TO PARTIES**

Failure to file written objections to the proposed findings and recommendations contained in this report within ten (10) days from the date of this service shall bar an aggrieved party from attacking the factual findings on appeal.  See 28 U.S.C. § 636(b)(1).

**Any party objecting to the factual findings in this report and recommendation shall file a copy of the transcript.**


Copies to:
Counsel of Record
District Judge

---

[5] The Government also argues that Defendant abandoned the bag when he failed to object to Officer Brody's instruction to the other officers to search the back yard.  It is unnecessary to address this argument as the search and seizure was valid on other grounds.